**In re Phillip Lynn LLOYD, Debtor.**

**Richard L. RAMSAY, Successor Trustee, to James Allen Brown, Trustee, Plaintiff,**

**v.**

**Phillip Lynn LLOYD, Debtor, Defendant.**

**Bankruptcy No. 86–41880M.**
**Adv. No. 88–332M.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

Feb. 12, 1992.

Richard L. Ramsay, Little Rock, Ark., Chapter 7 Trustee.

David Grace, Little Rock, Ark., for debtor/defendant.

Stuart Hankins, North Little Rock, Ark., for plaintiff/trustee.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On November 6, 1986, the debtor filed a voluntary petition for relief under the provisions of chapter 11 of the United States Bankruptcy Code, and on January 6, 1988, the case was converted to a case under chapter 7. On August 1, 1988, the trustee [1] filed a complaint objecting to the debtor's discharge pursuant to 11 U.S.C. § 727. The trustee filed an amended complaint and a second amended complaint on November 21, 1988, and February 10, 1989, respectively.

On October 23, 1990, the trustee filed a motion for summary judgment on the second amended complaint, and filed an amended motion for summary judgment on January 10, 1991. The debtor filed responses to both motions for summary judgment. A hearing was held on April 8, 1991, and the matter was taken under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J), and the Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052.

*Background*

In his second amended complaint, the trustee alleges, among other things, that the debtor made "false statements under oath and withheld from the Examiner, the Creditor's Committee and the Trustee recorded information relating to the Debtor's property and financial affairs in violation of 11 U.S.C. § 727(a)(4)(A) and (D)[.]" (Count II, Trustee's Second Am. Compl. Objecting to Discharge.)

On December 21, 1990, the debtor was found guilty of nine felony counts of an indictment filed in United States District Court [2] involving violations of 18 U.S.C. § 152. [3] The trustee attached to his amended motion for summary judgment certified copies of various counts of the debtor's indictment, including Counts XII and XIX. Also attached were certified copies of the verdict forms issued as a result of the criminal trial in the district court which corresponded to the indictment counts included.

The trustee's original motion for summary judgment was based on the pleadings, numerous exhibits, transcripts of the debtor's testimony at previous bankruptcy hearings, and various affidavits. In his amended motion for summary judgment, the trustee asserted the additional ground that the debtor's prior criminal convictions for violating 18 U.S.C. § 152 should be given collateral estoppel effect in determining some of the issues in this civil action.

The debtor responded to the motions for summary judgment by asserting that there are material facts in dispute with respect to the issues raised by the trustee in his second amended complaint. The debtor also objected to the trustee's offensive use of collateral estoppel and argued that the principle of mutuality is required before the collateral estoppel may be invoked.

1. James Allen Brown, Esquire, was appointed as trustee on January 6, 1988, and served in this capacity until January 29, 1990, at which time Richard L. Ramsay was appointed successor trustee.

2. *United States v. Phillip Lynn Lloyd,* Case No. LR–CR–90–137(1), United States District Court for the Eastern District of Arkansas. The con-

viction was affirmed on appeal in *United States v. Lloyd,* 947 F.2d 339 (8th Cir.1991).

3. 18 U.S.C. § 152 states in relevant part that "[w]hoever knowingly and fraudulently makes a false oath or account in or in relation to any cases under title 11" may be subject to fines, imprisonment, or both.

*Summary Judgment as to Count II, Subparagraphs 29B(iii) and (iv) of the Trustee's Second Amended Complaint*

Summary judgment should be granted only where it appears that there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Federal Rules of Civil Procedure 56(c); Federal Rules of Bankruptcy Procedure 7056; *Fields v. Gander,* 734 F.2d 1313, 1314 (8th Cir.1984); *Toshiba Am. Inc. v. Video King of Ill., Inc. (In re Video King of Ill., Inc.),* 100 B.R. 1008, 1012 (Bankr.N.D.Ill.1989). In determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the party opposing the motion for summary judgment and must give that party the benefit of all reasonable inferences drawn from the underlying facts. *Agristor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987); *Fields v. Gander,* 734 F.2d at 1314. To be material, the fact in dispute must affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A party opposing a motion for summary judgment may not rely upon the mere allegations of its pleadings but must instead set forth, by affidavit or otherwise, specific facts showing that a genuine issue exists for trial. Fed.R.Civ.P. 56(e); Fed.R.Bankr.P. 7056. *See Chauffeurs, Teamsters & Helpers Local Union 238 v. C.R.S.T., Inc.,* 795 F.2d 1400, 1402–03 (8th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986).

The trustee alleges the following in Count II, subparagraphs 29B(iii) and (iv) of the second amended complaint:

(iii) ... [T]he Debtor testified that Lambda, Inc. was not an operating company; was never activated as a company; that it never did business and never had a bank account. Lambda, Inc. was in fact an active conduit for many of the Debtor's transactions and it was through its bank account with Magna Bank in Belleville, Illinois that the $625,000.00 in Commander aircraft sale proceeds were funneled.... [T]he Debtor again denies that Lambda, Inc. ever had a bank account with Magna Bank in Belleville, Illinois. On the Schedules of Debts and property and on the Statement of Affairs attached to the Bankruptcy Petition of Lambda International, Inc. dated June 11, 1987, the Debtor as President of Lambda International, Inc. did not list Lambda, Inc. as a company in which Lambda International, Inc. held 100% of the stock.

(iv) ... [T]he Debtor testified that neither he nor Lambda, Inc. had ever had a bank account at Magna Bank in Belleville, Illinois.

The trustee, in support of his motion for summary judgment in regard to Count II, subparagraphs 29B(iii) and (iv), attached a transcript of a hearing before this Court on December 29, 1987. At the hearing, the debtor testified under oath as follows:

[Questioning by Mr. Robinson, attorney for the Creditors' Committee:]

Q: Have you ever had a bank account at Boatmen's Bank in St. Louis or in Belleville?

A: No.

Q: Has Lambda, Inc.?

A: No.

Q: Has any of the companies that you own that are listed on Exhibit 1 ever had a bank account at Boatmen's Bank?

A: No. I have never done any business with Boatmen's Bank. I don't even know of Boatmen's.

Q: Have you ever had a bank account at Magna Bank in Belleville, Illinois?

A: No.

Q: Has Lambda, Inc.?

A: At Magna Bank?

Q: Magna Bank in Belleville, Illinois.

A: Not to my recollection.

....

Q: And if Lambda, Inc., had an account at either of those banks with that amount of money, [$400,000] you would know about it, would you not?

A: Yes.

....

BY MR. ROBINSON:

Q: You see two documents on that page?

A: Yes.

Q: You see an official check from the Magna Bank to Lawyers Title?

A: Yes.

Q: For $400,000?

A: Yes.

Q: Dated November 4, 1986?

A: Yes.

Q: And do you see who the remitter of that cashier's check is?

A: Yes. It's Lambda, Inc.

Q: Lambda, Inc.?

A: Yes.

Q: And is Lambda, Inc., one of the companies that is reflected on Defendant's Exhibit 1?

A: That is a company that's reflected, yes, sir.

(December 29, 1987 Hr'g Tr. at 46–52.)

The trustee also attached to the motion for summary judgment a copy of a deposition of Steve C. Marsho. Mr. Marsho, a senior vice president of Magna Bank, N.A., in Belleville, Illinois, produced records of a bank account the debtor opened on October 17, 1986. This account, in the name of Lambda, Inc., was opened with an initial deposit of $625,000.00.

The debtor filed affidavits opposing the motion for summary judgment. The affidavit provided in relevant parts as follows:

I have never considered Lambda, Inc. to be an active operating company and I did not consider the bank account at First National Bank of Belleville, Illinois opened in the name of Lambda, Inc to be an account of Lambda, Inc. because all funds deposited to such account were the property of F & M Building Partnership. In my opinion, Lambda, Inc. had the same relationship to the bank account as it did to the airplane who [sic] sale gave rise to funds deposited into such account, that of nominee only.

(January 25, 1991 Aff. of Phillip Lynn Lloyd at ¶ 9.)

■ The trustee is entitled to summary judgment regarding the debtor's perjured testimony concerning the bank account at Magna Bank, in Belleville, Illinois. The debtor's affidavit opposing the trustee's motion does not dispute the existence of the bank account in Belleville. Instead, the debtor asserts a conclusion that since the money deposited in the account came from a different entity, the debtor's testimony was not perjured. This conclusion is unwarranted. The transcript of the December 29, 1987, hearing and the testimony at the deposition of Steve Marsho establish a basis to grant the trustee's motion for summary judgment as to Count II, subparagraphs 29B(iii) and (iv).

*Offensive Use of Collateral Estoppel*

In his amended motion for summary judgment, the trustee asserted the additional ground that the debtor's prior criminal convictions for violating 18 U.S.C. § 152 should be given collateral estoppel effect in determining some of the issues in this civil action.

Two preclusion principles exist in civil litigation: res judicata (claim preclusion) and collateral estoppel (issue preclusion). *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir.1990), *cert. denied* — U.S. —, 111 S.Ct. 74, 112 L.Ed.2d 48; *Hickman v. Elec. Keyboarding, Inc.*, 741 F.2d 230, 232 n. 2 (8th Cir.1984). "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Lane v. Peterson*, 899 F.2d at 741, quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Under the doctrine of collateral estoppel, the second proceeding is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. *Id.*

■ The offensive use of collateral estoppel involves a plaintiff seeking to estop a defendant from relitigating issues which the defendant previously litigated and lost against a different plaintiff. In the *Parklane Hosiery* case, the Supreme Court stated that trial courts should be granted broad discretion in determining when the

offensive use of collateral estoppel should be applied. The Court stated that:

> [t]he general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where ... the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 652. The Court went on to allow the offensive use of collateral estoppel in the *Parklane* case by analyzing that:

> in light of the serious allegations made in the SEC's complaint against the petitioners, as well as the foreseeability of subsequent private suits that typically follow a successful Government judgment, the petitioners had every incentive to litigate the SEC lawsuit fully and vigorously.... Finally, there will in the respondent's action be no procedural opportunities available to the petitioners that were unavailable in the first action of a kind that might be likely to cause a different result.

*Id.* at 332, 99 S.Ct. at 652. (Footnotes omitted.)

■ Collateral estoppel, as originally applied, was limited by the principle of mutuality. Mutuality provided that "neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment." *Parklane Hosiery*, 439 U.S. at 326–27, 99 S.Ct. at 649. However, almost from its inception, the mutuality requirement has been criticized by the courts, both state and federal. Most federal courts have moved away from the rigid requirements of mutuality. The Eighth Circuit Court of Appeals stated that the "mutuality requirement under federal law has been abandoned." *Lane v. Peterson*, 899 F.2d at 741, citing to *Parklane Hosiery*, 439 U.S. at 332, 99 S.Ct. at 652. *Accord Raiford v. Abney (In re Raiford)*, 695 F.2d 521, 523 (11th Cir.1983), affirming *Abney v. Raiford (In re Raiford)*, 14 B.R. 962 (Bankr.N.D.Ga.1981). In addition, the Eighth Circuit found that a party may rely on collateral estoppel even though the party is not bound by the prior judgment if the party against whom the judgment is used had a full and fair opportunity and incentive to litigate the issue in the prior action. *Lane v. Peterson*, 899 F.2d at 741; *Parklane Hosiery*, 439 U.S. at 332, 99 S.Ct. at 652.

### Collateral Estoppel Use of Prior Criminal Conviction in Subsequent Civil Action

The issue of whether a prior criminal conviction can bar relitigation in a subsequent civil action was discussed by the Eighth Circuit Court of Appeals. In *McNally v. Pulitzer Pub. Co.*, 532 F.2d 69 (8th Cir.1976), *cert. denied* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131, the Court stated:

> It is well established that prior federal criminal proceedings can work an estoppel in a subsequent civil proceeding, so long as the question involved was "distinctly put in issue and directly determined" in the criminal action. *See Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568–59, 71 S.Ct. 408, 414, 95 L.Ed. 534, 544 (1951); *Williams v. Liberty*, 461 F.2d 325, 327 (7th Cir. 1972); *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970).

532 F.2d at 76.

In a case directly on point, the Eleventh Circuit held that the debtor's guilty plea to a violation of 18 U.S.C. §. 152, making false oath in connection with a bankruptcy proceeding, bars the relitigation of factual issues in the bankruptcy action objecting to the debtor's discharge. *In re Raiford*, 695 F.2d 521 (11th Cir.1983). 11 U.S.C.A. § 727(a)(4)(A) provides that a discharge shall be granted, unless "the debtor knowingly and fraudulently, in or in connection with the [bankruptcy proceeding] made a false oath or account." In affirming the denial of the debtor's discharge based on the prior criminal convictions, the Court stated:

> The conduct involved in section 727 is identical to that proscribed under 18 U.S.C.A. § 152.... Both provisions come into play only if a debtor issues a false statement in relation to his bankruptcy petition. As each provision is implicated only if the improper conduct is

undertaken knowingly and fraudulently, the intent requirements are also identical. Here, the debtor's guilty plea and conviction under section 152 stemmed from his failure to disclose certain bank accounts and businesses in a financial statement submitted pursuant to his bankruptcy petition. Similar deliberate omissions have resulted in denials of discharges.

*Raiford,* 695 F.2d at 522.

■ Therefore, a prior criminal conviction can be used to estop relitigation of the issues in a subsequent civil action.

### *Applying Collateral Estoppel in This Case*

■ In the present case, mutuality is lacking because the parties in the two actions are different. As noted above, the Eighth Circuit has cautioned that in these instances, it must be clear that the party against whom collateral estoppel is being used had full incentive to litigate the matter in the prior litigation. Here, the debtor was the defendant in a criminal proceeding initiated by the United States that involved numerous felony indictments. The debtor had every reason to vigorously defend himself in the criminal proceeding because conviction could, and in fact did, result in imprisonment, fines, or both. Therefore, there is no unfairness in applying collateral estoppel in this civil case.

Four criteria must be met before the principles of collateral estoppel may be applied: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment." *Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983), citing *In re Piper Aircraft Distribution System Antitrust Litigation,* 551 F.2d 213 (8th Cir.1977). Therefore, the application of collateral estoppel or issue preclusion is limited to those matters previously at issue that were directly and necessarily adjudicated.

The trustee alleges that the factual allegations in Counts XII and XIX of the criminal indictments against the debtor are the same factual allegations contained in paragraphs 23, 24(a) and 29(B)(v) of the second amended complaint.

The trustee's second amended complaint alleges, in part, as follows:

(23) On or about September 15, 1986, [Kristi] Vetri caused to be incorporated an Illinois business corporation by the name of Lynxx Group Ltd. which was capitalized with the sum of $10,000.00 on March 17, 1987.... Sometime in late 1986 or early 1987, the Debtor acting on behalf of Lynxx Limited, Inc. agreed to transfer to Vetri the sum of $125,400.00....

(24) ... According to Vetri's July 21, 1988 deposition testimony, the $125,400.00 in the form of the aforesaid cashier's checks were utilized during 1987 and 1988 as follows:

(a) On January 12, 1987, Vetri allegedly purchased a Chevrolet Suburban automobile from Lynxx Limited, Inc. by delivering to the Debtor a $15,400.00 cashier's check. The 1986 Blue Suburban bearing Vehicle Identification Number 1G8GK26M8GF206604 ... was purchased new by Lynxx Limited, Inc. from Russell Chevrolet in North Little Rock for the sum of $20,800.00 approximately 4 months prior to the alleged sale to Vetri who in turn allegedly contributed the Suburban to Lynxx Group, Ltd.

 . . . .

(29) The Debtor knowingly, fraudulently and in connection with the Chapter 11 and Chapter 7 cases made the following false statements under oath....

B. (v) ... [T]he Debtor testifies that Lynxx Limited, Inc. sold a blue Suburban to a dealer in St. Louis failing to disclose the currently alleged sale to Lynxx Group, Ltd. and Vetri's involvement with that corporation[.]

Count XII of the criminal indictment charged that:

1. The Grand Jury realleges and incorporates herein paragraphs one through four of count VIII of this Indictment.

2. On or about May 19, 1987, in the Eastern District of Arkansas, during the deposition taken in relation to the bankruptcy proceeding of PHILLIP LYNN LLOYD, LR–86–1880M,

PHILLIP LYNN LLOYD,

the defendant herein, knowingly and fraudulently did make a false statement under the penalty of perjury, that is, the defendant testified as follows:

Q. Okay. August of '86, check to Russell Chevrolet for $20,800.

A. That was the purchase of the Suburban.

Q. Does Lynxx still have it?

A. *No, that was sold to a dealer in St. Louis.* That was sold in January of '86.

Q. January '87?

A. I'm sorry, January '87, yeah. (Tr. 288–89)

3. The aforesaid underlined testimony of PHILLIP LYNN LLOYD, as he then and there well knew, was false in that on or about January 9, 1987, PHILLIP LYNN LLOYD did not sell the Suburban to a dealer in St. Louis, but the vehicle described as a 1986 Chevrolet Silverado Suburban, vehicle identification number 1G8GK26M8GF206604, was transferred to Lynxx, Ltd., an entity which Illinois registration documents reflect that Kristi M. Vetri is President, and PHILLIP LYNN LLOYD, Chairman.

A violation of Title 18, United States Code, Section 152.

Count XIX of the indictment charged that:

1. The Grand Jury realleges and incorporates herein paragraphs one through four of count VIII of this Indictment.

2. On or about December 29, 1987, in the Eastern District of Arkansas, during a bankruptcy hearing in the case of In Re: Phillip Lynn Lloyd, docket number LR–86–1880, before the Honorable James G. Mixon, United States Bankruptcy Judge,

PHILLIP LYNN LLOYD,

the defendant herein, knowingly and fraudulently did make a false statement under the penalty of perjury, that is, the defendant testified as follows:

Q. Do you own or do any of your companies own a blue Chevrolet Suburban?

A. Linxx [sic] owned one at one time, yes.

Q. Do you still?

A. No.

Q. Did you dispose of that since your bankruptcy filing?

A. I can't recall if it was before or after.

Q. Who did you sell it to?

A. *It was sold to a dealer.*

Q. Where?

A. *In St. Louis I believe.* (Tr. 83)

3. The aforesaid underlined testimony of PHILLIP LYNN LLOYD, as he then and there well knew, was false in that the vehicle was not sold to a dealer, but PHILLIP LYNN LLOYD transferred ownership of the Suburban on to Lynxx, Ltd., an entity which Illinois registration documents reflect that Kristi M. Vetri is President and PHILLIP LYNN LLOYD, Chairman.

A violation of Title 18, United States Code, Section 152.

A criminal jury found the debtor guilty of the allegations contained in Counts XII and XIX, and a judgment of conviction on these two counts and others was entered by the district court on December 21, 1990.

The trustee alleged that the debtor made a false oath in connection with his sworn testimony regarding the sale of the Suburban automobile to Lynxx, Ltd. Mr. Lloyd was convicted of two counts of false oath regarding the same testimony the trustee alleges as grounds for the denial of his discharge. All four criteria that must be met before the principles of collateral estoppel may be applied have been met. Therefore, under the doctrine of collateral estoppel, further inquiry into the issue of a false oath established as a matter of law by the criminal proceeding is precluded in this civil proceeding. The trustee is entitled to judgment as to Count II, subparagraph 29B(v).

The trustee also alleges that the factual allegations in Count XIII of the criminal indictments against the debtor are the same factual allegations contained in subparagraphs 29B(iii) and (iv) of the second amended complaint.

The trustee's second amended complaint alleges, in part, as follows:

(iii) . . . [T]he Debtor testified that Lambda, Inc. was not an operating company; was never activated as a company; that it never did business and never had a bank account. Lambda, Inc. was in fact an active conduit for many of the Debtor's transactions and it was through its bank account with Magna Bank in Belleville, Illinois that the $625,000.00 in Commander aircraft sale proceeds were funneled.... [T]he Debtor again denies that Lambda, Inc. ever had a bank account with Magna Bank in Belleville, Illinois. On the Schedules of Debts and property and on the Statement of Affairs attached to the Bankruptcy Petition of Lambda International, Inc. dated June 11, 1987, the Debtor as President of Lambda International, Inc. did not list Lambda, Inc. as a company in which Lambda International, Inc. held 100% of the stock.

(iv) . . . [T]he Debtor testified that neither he nor Lambda, Inc. had ever had a bank account at Magna Bank in Belleville, Illinois.

Count XIII of the criminal indictment charged that:

1. The Grand Jury realleges and incorporates herein paragraphs one through four of count VIII of this Indictment.

2. On or about December 29, 1997, in the Eastern District of Arkansas, during a bankruptcy hearing in the case of In Re: Phillip Lynn Lloyd, docket number LR–86–1880, before the Honorable James G. Mixon, United States Bankruptcy Judge,

PHILLIP LYNN LLOYD,

the defendant herein, knowingly and fraudulently did make a false statement under the penalty of perjury, that is, the defendant testified as follows:

Q. So Lambda, Inc., was never activated. Does that mean it never did business?

A. I think that's correct, yes.

Q. It never would have had a bank account, for example?

A. *No.*

Q. Is that correct?

A. *Yes.* (Tr. 34)

3. The aforesaid underlined testimony of PHILLIP LYNN LLOYD, as he then and there well knew, was false in that PHILLIP LYNN LLOYD had opened a bank account in the name of Lambda, Inc., at Magna Bank, First National Bank of Belleville, Illinois, on or about October 17, 1986, with deposits totaling $626,000.00.

A violation of Title 18, United States Code, Section 152.

A criminal jury found the debtor guilty of the allegations contained in Count XIII. A judgment of conviction on Count XIII was entered by the district court on December 21, 1990.

The trustee alleged that the debtor made a false oath in connection with his sworn testimony regarding a bank account in the name of Lambda, Inc., at Magna Bank, Belleville, Illinois. Mr. Lloyd was convicted on one count of false oath regarding the same testimony the trustee alleges as grounds for the denial of his discharge. Therefore, under the doctrine of collateral estoppel, the trustee is entitled to judgment as to Count II, subparagraphs 29B(iii) and (iv) of the second amended complaint.

The other grounds for summary judgment argued by the trustee are overruled.

For the reasons stated herein, the trustee's motion for summary judgment is granted in part, and establishes the debtor's violation of 11 U.S.C. § 727(a)(4)(A) and (a)(4)(D). Therefore, the debtor's discharge is denied.

IT IS SO ORDERED.