**In re James M. CHAPLIN and Rebecca L. Chaplin, Debtors.**

**TRANSAMERICA PREMIER INSURANCE COMPANY,** **Plaintiff,**

v.

**James M. CHAPLIN and Rebecca L. Chaplin, Defendants.**

**Bankruptcy No. 90–25476–JES. Adv. Nos. 91–2155, 91–2016.**

United States Bankruptcy Court, E.D. Wisconsin.

March 6, 1995.

---

**9.** In any event, this argument is unclear and gives a first impression of not carrying much    weight.

Jeffrey J. Liotta, Milwaukee, WI, for plaintiff.

James and Rebecca Chaplin, pro se, Oconto, WI.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Transamerica Premier Insurance Company ("Transamerica") has filed a motion for summary judgment denying the discharge of James Chaplin ("Chaplin") under 11 U.S.C. § 727(a)(2)(B) and § 727(a)(4)(A).[1] This adversary is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and (J).

In June 1989, Chaplin contracted with the State of Wisconsin ("State") to build pit toilets at various State parks for a total contract price of $237,126. In May 1990, the State declared its contracts with Chaplin to be in default, asserting that the work was not being completed according to schedule. The State then filed a claim against Chaplin's bonding company, Transamerica. As required under the terms of its performance/payment bond in favor of the State, Transamerica hired and paid another contractor, Riutta Contractors & Sales, to complete the project. Transamerica also com

pensated Chaplin's unpaid subcontractors and material suppliers. Transamerica sought the return from Chaplin of various construction materials, which had been delivered to the construction sites. After Chaplin refused to comply, Transamerica brought a replevin suit against him in August 1990.

Chaplin and his wife, Rebecca Chaplin, thereafter filed a joint petition for relief under chapter 7 of the Bankruptcy Code on October 15, 1990. Transamerica filed a consolidated amended adversary complaint against the Chaplins on May 29, 1991. The adversary complaint included counts for denial of discharge under § 727(a)(2)(B) (transfer or concealment of assets) and under § 727(a)(4)(A) (false oath).[2] *See also* footnote 1, *supra.*

In November 1992, a federal grand jury returned a 4–count indictment against Chaplin for bankruptcy crimes stemming from his involvement in the pit toilet project with the State. Count One charged Chaplin with knowingly and fraudulently transferring and concealing $8,000 cash by turning the funds over to his father-in-law, Joseph Voss, on October 23, 1990 (eight days after Chaplin filed his bankruptcy petition), in violation of 18 U.S.C. § 152. The other three counts were based upon perjury arising out of depositions taken of Chaplin during his bankruptcy, in violation of 18 U.S.C. § 1621. Count Two alleged that Chaplin lied when he denied that he turned the $8,000 over to Mr. Voss. Count Three alleged that Chaplin lied when he denied that he placed construction materials in a garage at the Voss residence in August 1991. Count Four alleged that Chaplin lied when he denied that he removed

---

1. Transamerica's adversary complaint also contains counts for exception to discharge under § 523(a)(4) and § 523(a)(6) against James Chaplin. In addition, it seeks denial of discharge and exception to discharge against Rebecca L. Chaplin, the wife of James Chaplin. However, these matters are not the subject of Transamerica's pending summary judgment motion.

2. § 727. **Discharge.**

(a) The court shall grant the debtor a discharge, unless—

– – –

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

– – –

(B) property of the estate, after the date of the filing of the petition;

– – –

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

these construction materials from the garage at the Voss residence in January 1992.

On May 21, 1993, Chaplin was convicted on all four counts. The district court sentenced Chaplin to serve one year in prison, concurrently, for each of the four counts and ordered Chaplin to make restitution of $47,410.

Chaplin appealed the three counts that were based upon perjury arising out of bankruptcy depositions. Chaplin did not appeal Count One. *See U.S. v. Chaplin*, 25 F.3d 1373, 1376 (7th Cir.1994).

■ On June 6, 1994, the Seventh Circuit Court of Appeals reversed Chaplin's convictions on Counts Two and Four on the grounds that the government failed to comply with the "two witness rule."[3] Chaplin's conviction on Count Three was affirmed.

Transamerica's summary judgment motion is based upon collateral estoppel. Summary judgment is granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); F.R.Bankr.P. 7056. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The purpose of this rule is to avoid unnecessary trials in cases where there are no genuine factual issues in dispute. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 471 (7th Cir.1988). Summary judgment is an extreme remedy to be granted only where it clearly appears there are no bona fide issues as to material facts. It is the non-moving party's responsibility to set forth specific facts which demonstrate there are genuine material issues of fact for trial. F.R.Civ.P. 56(e); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). If the evidence opposing summary judgment is merely colorable or not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 249–50, 106 S.Ct. 2505 at 2510–11, 91 L.Ed.2d 202 (1986).

■ The question for this court's consideration is whether Chaplin's criminal convictions in Count One (fraudulent transfer and concealment of assets) and Count Three (lying by denying that he deposited materials in the Voss garage) constitute collateral estoppel (issue preclusion), which, in turn, support granting Transamerica's motion for summary judgment.

The Seventh Circuit has ruled that issues decided in prior civil proceedings are collateral estoppel in subsequent civil proceedings, provided the following criteria are met:

1. The issue sought to be precluded is the same as the issue involved in the prior proceeding,

2. The issue must have been actually litigated in the prior litigation,

3. A determination of the issue must have been essential to the final judgment in the prior proceeding, and

4. The party against whom estoppel is invoked must have been fully represented in the prior proceeding.

*Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987). *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir.1994).

The doctrine of collateral estoppel has been utilized in applying findings made in criminal proceedings to bankruptcy proceedings involving denial of discharge under § 727 and exception to discharge under § 523. *See In re Lloyd*, 142 B.R. 866 (Bankr.E.D.Ark.1992) (debtor's guilty plea in a federal criminal suit to having made a false oath is collateral estoppel and justifies denial of discharge under § 727(a)(4)(A)); *In re Raiford*, 695 F.2d 521 (11th Cir.1983) (guilty plea to bankruptcy crime for false oath under 18 U.S.C. § 152 is collateral estoppel and is sufficient to deny a discharge based upon false oath). *See also In re Wright*, 87 B.R. 1011 (Bankr.D.S.D.1988); *In re Kelly*, 155 B.R. 75 (Bankr.S.D.N.Y.1993).

■ The underlying rationale for applying collateral estoppel to factual findings made in criminal proceedings is the recognition that the standard of proof for findings in criminal

3. Under the "two witness rule," the uncorroborated oath of one witness is not sufficient to establish the falsity of testimony of an accused in

an indictment for perjury. *Hammer v. United States*, 271 U.S. 620, 626, 46 S.Ct. 603, 604, 70 L.Ed. 1118 (1926).

proceedings is higher than in bankruptcy proceedings. Because the standard of proof is higher, the procedural protections which attach in the criminal action provide a sufficiently reliable determination of the particular issues decided. *In re Raiford,* 695 F.2d at 523.

The findings in Counts One and Three made by the jury in Chaplin's criminal case mirror those elements required to deny a bankruptcy discharge under 11 U.S.C. §§ 727(a)(2)(B) and 727(a)(4)(A). Denial of discharge under § 727(a)(2)(B) requires the following:

1. Transfer or concealment of property,
2. Such property constituted property of the estate,
3. The transfer or concealment occurred after the filing of the bankruptcy petition, and
4. The transfer or concealment was made with the intent to defraud the bankruptcy trustee.

Chaplin's criminal conviction of knowingly and fraudulently transferring and concealing $8,000 cash shortly after having filed bankruptcy (Count 1) satisfies all elements under § 727(a)(2)(B).

■ Denial of discharge under § 727(a)(4)(A) requires the following:

1. Debtor made a statement under oath,
2. The statement was false,
3. Debtor knew the statement was false,
4. The statement was made with a fraudulent intent, and
5. The statement related materially to the bankruptcy case.

*In re Beaubouef,* 966 F.2d 174, 178 (5th Cir.1992).

■ Chaplin's criminal conviction of Count One not only provides grounds for denial of his discharge under § 727(a)(2)(B) but also furnishes a separate basis for denial of his discharge under § 727(a)(4)(A). He not only concealed $8,000 cash but also omitted it from his verified bankruptcy schedule of assets. Moreover, his conviction of lying when he denied that he had deposited materials in the Voss garage (Count Three) further justi-fies denial of his discharge on false oath grounds.

■ Chaplin has conceded in his brief that the criminal action and the bankruptcy action both involve the same parties and the same issues. He was fully represented in the criminal action, and the issues were actually litigated and were essential to his conviction as contained in the criminal judgment. The underlying findings were made by a jury which was required to apply the standard of "beyond a reasonable doubt." For denial of a discharge in bankruptcy, the lower standard of "preponderance of the evidence" is all that is required. *In re Serafini,* 938 F.2d 1156, 1157 (10th Cir.1991); *In re Beaubouef,* 966 F.2d at 178; *In re Adams,* 31 F.3d 389, 393–94 (6th Cir.1994). In light of this, the criteria for collateral estoppel under *Klingman v. Levinson, supra,* have been satisfied, and it is appropriate to apply collateral estoppel to the findings made in the criminal action.

### TRANSAMERICA'S STANDING

■ Chaplin argues that Transamerica is not a creditor in this bankruptcy case and, therefore, has no standing to pursue this adversary. The uncontroverted documents presented by Transamerica in support of its summary judgment motion persuasively refute this contention.

Transamerica, upon paying Riutta Contractors & Sales to complete the pit toilet project and paying Chaplin's subcontractors and material suppliers in fulfillment of its obligations under its bond, incurred a loss. Under the terms of its security bond, when any loss occurs, Chaplin, as principal, was required to fully reimburse Transamerica. Even though a separate agreement between Transamerica and the United States Small Business Administration ("SBA") required SBA to reimburse Transamerica to the extent of 80%, Transamerica still suffered a 20% unreimbursed loss. While the exact amount of Transamerica's unreimbursed loss may be in dispute, Transamerica is clearly a creditor with standing to pursue this adversary case.

Furthermore, Chaplin was ordered, as part of his criminal sentence, to make restitution of $47,410 to Transamerica through the United States Probation Department. It is well established that restitution obligations are debts. The United States Supreme Court in *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), declared that restitution obligations are "debts" within the meaning of § 101 of the Bankruptcy Code.[4]

## DOUBLE JEOPARDY

Chaplin also submits that a denial of his discharge would violate the double jeopardy clause under the Fifth Amendment because of his criminal conviction for bankruptcy crimes.[5] His reliance upon *Dept. of Rev. of Montana v. Kurth Ranch*, — U.S. —, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), is misplaced. *Kurth Ranch* involved a state tax imposed upon the possession and storage of marijuana. The amount of the tax was 8 times the marijuana market value. The United States Supreme Court disallowed the state tax and held that this was double jeopardy because the state tax was a penalty imposed after the debtor had been convicted criminally and sentenced to prison for the sale and possession of marijuana.

In contrast, denial of discharge is not a second punishment for the same offense. Bankruptcy proceedings are civil in nature. A denial of discharge results in neither imprisonment nor a monetary penalty. Sections 727(a)(2) and (4) would be rendered meaningless if Chaplin, after having been convicted of a crime, could then successfully claim double jeopardy and thereby avoid a denial of his discharge. A discharge in bankruptcy is not a constitutional right. *U.S. v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973); *In re Connelly*, 59 B.R. 421, 448 (Bankr.N.D.Ill.1986); *In re Fitzger-*

*ald*, 167 B.R. 689, 691 (Bankr.N.D.Ga.1994). It is a privilege. *In re DeBruin*, 144 B.R. 90, 94 (Bankr.E.D.Wis.1992). The United States Supreme Court in *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991), declared that a fresh start is reserved only for the "honest but unfortunate debtor." Chaplin does not fit into this category.

## CHAPLIN'S OTHER ARGUMENTS

Chaplin submits that because his wife, Rebecca Chaplin, was not charged with any criminal proceedings, she should now receive her bankruptcy discharge. He further avers that, because he had been ordered to make restitution in a set amount ($47,410) as part of his criminal sentence, that established the full extent of Transamerica's damages. As a basis for these arguments, he contends that collateral estoppel should be applied "across the board." Transamerica disputes these contentions. Because the summary judgment motion deals solely with the issue of whether Chaplin's discharge should be denied, these arguments need not be addressed.

## CONCLUSION

There is no genuine issue of material fact with respect to Transamerica's objections to Chaplin's discharge. Transamerica is entitled to summary judgment as a matter of law. Chaplin is denied a discharge under §§ 727(a)(2)(B) and 727(a)(4)(A).

In *In re Yokley*, 61 B.R. 198, 198–99 (Bankr.W.D.Ky.1986), the court aptly stated:

Rare is the case in which a bankruptcy court will completely deny a discharge to a bankrupt petitioner. Such an extraordinary measure is justified, we have held, only where there is a preconceived scheme to thwart the rights of creditors and the processes of this court or such cavalier

4. 11 U.S.C. § 101(12) of the Bankruptcy Code defines "debt" as a "liability on a claim." Congress, by adding § 523(a)(13) as part of the Bankruptcy Reform Act of 1994, reaffirmed the *Davenport* ruling that a criminal restitution order is a debt. Section 523(a)(13) specifically excepts from discharge "any debt ... for any payment of an order of restitution issued under Title 18, United States Code." This provision, like the

other exceptions under § 523, only applies to debts.

5. Although Chaplin's brief refers to the "double jeopardy clause of the Eighth Amendment," it is assumed that he intended to refer to the Fifth Amendment.

disregard of duty as to constitute the legal equivalent of such motives.

This is such a case.