In re Steven A. VICTOR, Debtor.

**DREYER AND TRAUB LLP, Plaintiff,**

v.

**Steven A. VICTOR, Defendant.**

**Paul I. KROHN, Trustee of Syosset Laboratories, Co., Inc., Plaintiff,**

v.

**Steven A. VICTOR, Defendant.**

**Bankruptcy No. 94 B 43920 (JHG). Adv. Nos. 96–8388A, 96–8360A.**

United States Bankruptcy Court, S.D. New York.

July 9, 1996.

Dreyer and Traub (Edward H. Tillinghast, III, of counsel), New York City, for Dreyer and Traub.

Paul I. Krohn, Brooklyn, NY, for Chapter 7 Trustee of Syosset Laboratories Co. Inc.

Walter, Conston, Alexander & Green, P.C. (Marc Stuart Goldberg, Daniel J. O'Neil, Stephen Hart and Delphine W. Knight, of counsel), New York City, for Steven Victor.

Ian J. Gazes, New York City, for Chapter 7 Trustee.

*DECISION ON MOTIONS TO DISMISS*

JEFFRY H. GALLET, Bankruptcy Judge.

## I. INTRODUCTION

Chapter 7 debtor Steven A. Victor ("Victor") moves [1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure, to dismiss the complaints of Dreyer and Traub ("D & T") and Paul I. Krohn, Chapter 7 Trustee of Syosset Laboratories Co., Inc., ("Krohn") (collectively the "Plaintiffs") seeking to declare certain of his debts nondischargeable, on the grounds that each fails to state a claim upon which relief can be granted.[2]

## II. FACTS

Victor filed a petition for relief under Chapter 11 on August 18, 1994. On October 25, 1995, he voluntarily converted the case to a liquidation under Chapter 7.

On December 2, 1995, a "Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Meeting of Creditors and Fixing of Dates" was issued by the Clerk of the Bankruptcy Court ("First Notice"). The First Notice was sent to all creditors, including the Plaintiffs. It scheduled January 9, 1996, as the date for the first meeting of creditors (11 U.S.C. 341) and March 11, 1996, as the last day to file complaints objecting to discharge of the debtor or to determine dis-

---

1. The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(I).

2. The two motions, having identical facts and legal issues, are decided here together.

chargeability of certain types of debts ("Bar Date"). D & T and Krohn each received the First Notice.

On January 9, 1996, New York City was immobilized by a blizzard. Both the Bankruptcy Court and the Office of the United States Trustee ("UST") were closed. The meeting of creditors did not take place on that date.

On January 19, 1996, the Clerk of the Bankruptcy Court issued a second "Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Meeting of Creditors and Fixing of Dates" ("Second Notice"). The Second Notice scheduled February 13, 1996 as the date for the 341 meeting and April 15, 1996 as the Bar Date. D & T and Krohn each received the Second Notice.

On April 10, 1996, Krohn filed an adversary proceeding to determine the dischargeability of a certain debt owed by Victor. On April 16, 1996, D & T filed an adversary proceeding to seek a declaratory judgment as to the nondischargeability of a Chapter 11 expense claim.

## III. LAW

 In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all well-plead facts alleged in the complaint as true. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir.1985). Such facts "must be construed in the light most favorable to the plaintiff." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Barr v. Dramatists Guild, Inc.*, 573 F.Supp. 555, 559

(S.D.N.Y.1983). This motion to dismiss may succeed only if it appears certain that the Plaintiffs' can prove no set of facts in support of their claims entitling them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *In re Vinci*, 108 B.R. 439, 441 (Bankr.S.D.N.Y.1989); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir. 1991), *cert. denied* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). The court's role in determining the motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). Plaintiffs need not provide detailed information tending to prove their cases in their complaints.

Victor argues that the complaints must be dismissed because they were filed after the date in the First Notice and are, therefore, time barred. His argument is essentially that the March 11, 1996 Bar Date, rather than the April 15, 1996–date, which is the date relied on by the Plaintiffs, should govern.[3]

In support of this, Victor relies on Fed. R.Bankr.P. 4007(c), which provides the time period within which a section 523(c) dischargeability complaint must be filed. It states:

A complaint to determine the dischargeability of any debt pursuant to 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so

---

3. I must note that this is not Victor's first such motion to dismiss. On April 12, 1995, I issued a decision denying Victor's motion to dismiss the complaint of The Bank of New York ("BONY"), which sought a determination of the dischargeability of a loan owed by Victor to BONY. In that case, Victor moved on similar grounds.

In the BONY case, the section 341 meeting in the chapter 11 case was originally set for October 17, 1994. However, notice of that meeting was never sent to the creditors. On November 26, 1994, at the request of the UST, notice of a new section 341 meeting, setting December 5, 1994 as the date of the meeting, was sent out by the clerk's office to all creditors. That notice gave December 13, 1994 as the last date to file objections to discharge and to determine dis-

chargeability. At the December 5, 1994 meeting, Victor did not appear, and his attorney, Marc Stuart Goldberg, appeared late. Victor's attorney asked for an adjournment of the 341 meeting. The adjournment was granted, and a new meeting was set for December 14, 1994.

BONY filed its complaint on February 5, 1995, which was 60 days after the December 5, 1994 initial 341 date. Victor argued that the complaint was untimely because BONY was required to file its complaint within 60 days of the October 17, 1994 date. I ultimately found that the time ran from the December 5, 1994 date, since no creditor received notice of the October 17, 1994 date, and the December 13, 1994 bar date was erroneous. Therefore, BONY's complaint was timely.

fixed in the manner provided in Rule 2002. On motion of any part in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

In addition, Fed.R.Bankr.P. 9006(b)(3) provides that a "court may enlarge the time for taking action [under Rule 4007(c) ] only to the extent and under the conditions stated in those rules." Victor argues that this court should strictly adhere to the language of Rule 4007(c) and hold that in order for a complaint to be timely, it needed to be filed by March 11, 1996, which is "60 days following the first date set for the meeting of creditors held pursuant to § 341." Fed. R.Bankr.P. 4007(c).

Victor relies on cases holding that it is irrelevant whether the § 341 meeting actually took place on the date scheduled, since the time period runs from the "date set" and not the date that the meeting was actually held. He cites *In re Bowman*, 800 F.2d 520 (5th Cir.1986). I was unable to find the case at that location. With additional research, I was able to determine that the opinion had been withdrawn by the Court of Appeals for the 5th Circuit and replaced by *In re Bowman*, 821 F.2d 245 (5th Cir.1987). (The Court of Appeals dismissed the appeal from the District Court on grounds that the order appealed from was not a final appealable order.)

The second case cited by Victor is *In re Rhodes*, 61 B.R. 626 (9th Cir. BAP 1986). The *Rhodes* court dealt with the issue of whether the 60 days runs from the date set for the section 341 meeting, or from when the meeting is first held, and it determined that the time ran from the date set. *Id.* at 629. Although *Rhodes* dealt with the issue of when the 60 days begins to run, it did not address what happens when two conflicting notices are sent to creditors. The facts of *Rhodes* are distinguishable from this case and it is not useful in this analysis.

Victor also relies on a line of cases holding that time limits under Rule 4004 and 4007 are jurisdictional and cannot be extended. *In re Dombroff*, 192 B.R. 615 (S.D.N.Y.1996). The *Dombroff* court addressed the issue of whether the bankruptcy court could, *nunc pro tunc*, extend the time to file a complaint objecting to discharge. Although it ultimately held that the Bankruptcy court's *nunc pro tunc* extension of the time for objecting to discharge was unauthorized, it noted that the issue of whether a court can accept an untimely complaint is "not easily resolved." *Id.* at 618. Like the *Rhodes* case, *Dombroff* did not address the issue of two conflicting Bar Dates and is factually distinguishable from this case.

One line of cases, to which *Dombroff* cites, does address the issue before me, but does not support Victor's position.[4] *See In re Anwiler*, 958 F.2d 925 (9th Cir.), *cert. denied*, 506 U.S. 882, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992); *In re Themy*, 6 F.3d 688 (10th Cir. 1993); and *In re Isaacman*, 26 F.3d 629 (6th Cir.1994).

■ All of these cases, and this court, agree that the time limits of Rule 4007(c) are strict and should be treated as such. The Debtor is entitled to a fresh start and should have his case administered promptly. Although the bankruptcy court may not *sua sponte* extend strict deadlines, *In re Dombroff*, 192 B.R. 615 (S.D.N.Y.1996), it should correct errors that it commits. "[I]n almost all instances, Rule 4007(c) should be strictly enforced. The Court will only step in under extreme circumstances with its equitable powers under § 105 to relieve a party from Rule 4007(c)'s explicit time table." *Matter of Hershkovitz*, 101 B.R. 816, 819 (Bankr. N.D.Ga.1989)

■ A court has the inherent equitable power to correct its own mistakes. *In re Anwiler*, 958 F.2d 925 (9th Cir.), *cert. denied*, 506 U.S. 882, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992). The Bankruptcy Court's equity pow-

---

4. It must be noted that, even though these cases, which deal with the issue before me, were cited in *Dombroff*, a case relied upon in Victor's memorandum of law, his attorneys failed to bring them to my attention. With such a persuasive line of cases in opposition to his position, cited in a case upon which he relies, I would have expected Victor's counsel to have, at least, attempted to distinguish it. Rather, they ignored the line.

ers are found in 11 U.S.C. § 105(a) which states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

"The equitable power given to courts by 11 U.S.C. § 105(a) would be meaningless if courts were unable to correct their own mistakes." *In re Anwiler*, 958 F.2d at 929; *accord, In re Themy*, 6 F.3d at 690; and *In re Isaacman*, 26 F.3d at 632.

In each of these cases, because the case had been transferred to another venue, a second notice of the Bar Date was issued by a court other than court that issued the first notice. In *Isaacman*, the creditor relied on an oral communication by the clerk of the court. The *Anwiler, Themy* and *Isaacman* courts each determined that equity dictated that the complaints should stand, since the creditors relied on the court's second notice. "[W]here the clerk issues a second § 341 notice containing a new bar date prior to the expiration of the first bar date and there is no reason for a creditor to question the second notice, this Court's equitable powers will be used to prevent an injustice." *In re Anwiler*, 958 F.2d at 928 (quoting *Matter of Hershkovitz*, 101 B.R. at 819). *See also In re Schoofs*, 115 B.R. 1 (Bankr.D.D.C.1990).

As an initial matter, although other courts utilized their equitable powers to correct a mistake of the court, I am not persuaded that the sending of the Second Notice was in fact a mistake by this court. However, whether sending the Second Notice as a mistake or not is irrelevant to the analysis. The overriding considerations are the creditors' reliance on the court and fairness.

5. Indeed, the City of New York was under a state of emergency that day. Virtually all schools,

## IV. DISCUSSION

■ During oral Argument, I asked Debtor's counsel to comment on the circuit court cases cited above. Counsel argued that what I should consider is the reasonableness of the Plaintiffs' actions, and, in some manner, find that the Plaintiffs' reliance on the date contained in the court's Second Notice was unreasonable. To characterize the Plaintiffs' reliance on a date set by the court as unreasonable would certainly shock the conscience and, at the very least, be an abuse of my discretion. *In re Anwiler*, 958 F.2d at 929.

It is clear that the facts before me warrant the use of my equitable powers. There was no reason for the creditors to question the Second Notice. All of the parties knew that the Bankruptcy Court and the UST were closed on the date of the first scheduled section 341 meeting[5]. Therefore, when the clerk's office scheduled a second section 341 meeting with a new date to file complaints, there was no reason for the Plaintiffs to question the validity of that Second Notice.

> It would be very harsh indeed to deny equitable relief in cases where the delay in filing is not due to the fault of either party. While it is true that the Creditors could have made a motion to extend time if they were confused about the proper date for filing the complaint, [the Debtor] could have also asked the court for clarification. *Id.*

Between the Plaintiffs and Victor "[i]f one party must bear a loss, it should be the Debtor because he had notice of the erroneous date and had greater incentive to examine and correct the notice. It does not serve the Debtor well in equity to object to the complaint after the Claimants have reasonably relied on and complied with the erroneous notice." *In re Sibley*, 71 B.R. 147, 149 (Bankr.D.Mass.1987).

A miscarriage of justice would occur if I were to determine that the complaints were untimely filed. If this court did not exercise its equitable powers there would be an injustice and the creditor "would lose [the] right to object because of his reliance on an error

government offices and businesses were closed.

made by the bankruptcy court." *In re Riso,* 57 B.R. 789, 793 (D.N.H.1986); *In re Themy,* 6 F.3d at 690. Just as the debtor is entitled to have his case administered efficiently, the creditors are entitled to rely on information issued by the court. *In re Isaacman,* 26 F.3d at 632.

Accordingly, the motions are denied.

Settle order.