In re Marilyn M. MOSS, Debtor.

Steven C. Block, Trustee, Plaintiff,

v.

Marilyn M. Moss, Defendant.

Bankruptcy No. 98–43272–1.
Adversary No. 00–4058–1.

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

Feb. 7, 2001.

Marilyn M. Moss, pro se.

Steven C. Block, Kansas City, MO, trustee.

### MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

The above-captioned Adversary Proceeding, filed by the Trustee, Steven C. Block, on April 7, 2000, seeks the denial of Debtor Marilyn M. Moss's discharge pursuant to Bankruptcy Code sections 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), 727(a)(5) and 727(a)(6)(A). On July 18, 2000, the Debtor filed a Motion for Summary Judgment arguing, *inter alia*, that the Trustee's Complaint was untimely. This Motion was not ruled on by the Court and the matter was set for trial (along with other matters) on November 15–17, 2000. At the outset of the trial, the Court announced orally that it would hear evidence and arguments on the Trustee's Complaint and that it would rule on the Debtor's Motion for Summary Judgment together with the Court's judg-

ment on the Trustee's Complaint. The Debtor did not object to this procedure.

Upon consideration of the evidence, arguments and relevant law the Court is ready to rule.

The Court has jurisdiction of these proceedings pursuant to 28 U.S.C. §§ 1334 and 157(a), this is a core proceeding under 28 U.S.C. § 157(b)(2)(J), and venue is proper pursuant to 28 U.S.C. § 1409. This Memorandum Opinion and Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

A detailed factual and legal background pertinent to this Adversary Proceeding has been set forth in the Court's Memorandum Opinion and Order entered contemporaneously herewith in Adversary Proceeding 00–4091. For the sake of brevity, those findings of fact and conclusions of law are incorporated herein by reference. Such additional facts as are necessary to an understanding of the issues will be developed in the Court's discussion of those issues.

Some understanding of the procedural history of this case, however, will be helpful to an understanding of the issues that have been raised and presented to the Court for resolution.

### PROCEDURAL HISTORY

Marilyn M. Moss ("Moss" or "Debtor") filed, *pro se*, a Chapter 7 Petition in this Court on August 6, 1998. She listed as her address a mail box facility in Lee's Summit, Missouri, which is in Jackson County, Missouri, and in the Western District of Missouri. In her Petition and bankruptcy schedules, she initially listed only $2,775.00 in assets but $977,191.11 in unsecured debts, consisting largely of a judgment obtained against her in California by two creditor law firms, Burton & Norris and Gronemeier & Barker.[1]

---

1. The schedules were inconsistent with respect to the debt(s) owed the law firms. In Schedule D, Moss listed a secured debt to the

law firms of $492,000.00. In Schedule F, she listed the total debt as unsecured in the amount of $963,778.11 (a judgment of

Soon thereafter, on August 27, 1998, Moss filed what she called "Disabled Debtor Ex Parte Application for 30–day Continuance of Creditors Meeting and Accommodation Under Americans with Disabilities Act."(sic) In this Ex Parte Application, Moss declared that she was diagnosed in 1993 with multiple sclerosis and that in the past year "not only have I lost the use of my legs and my ability control my bowels and bladder, but now my vocal cords are useless and I have difficulty speaking." (sic) Incorporated in the Application was the purported declaration of a Dr. Joseph Lindsay, which stated that Moss "suffers with advanced symptoms of multiple sclerosis including loss of the use of her legs and control of her bowels and bladder," that in the past year her vocal cords "have been affected by the progressive nerve damage resulting in her inability to speak," and that "[a]t this time, it is physically impossible for Ms. Moss to travel or communicate by speaking."[2] Moss asked that her attendance at the meeting of creditors be excused, and that in lieu of her personal attendance she would agree to provide written answers to written questions.

On September 2, 1998, the creditor law firms, Gronemeier & Barker and Burton & Norris, filed a Motion for Relief seeking leave to proceed with two legal actions in the California courts in which they were attempting to execute on a residential property in Oxnard, California, in which the Debtor purportedly had an interest. At the request of the creditors, an expedited hearing was scheduled on the Motion on September 6, 1998, but the hearing had to be continued to September 29, 1998,

because the creditors' attorney had been unable to serve Moss with the motion.

In the meantime, Moss had failed to attend the § 341 meeting of creditors on September 2, 1998, and that meeting had been rescheduled by the Trustee for October 5, 1998. Shortly thereafter, both the United States Trustee and counsel for the creditor law firms filed responses to the Debtor's Ex Parte Application to excuse her attendance at the meeting of creditors; both opposed waiving the Debtor's personal attendance at the meeting.

The Debtor did not attend the hearing on the Motion for Relief scheduled on September 29, 1998. Instead, the day before the hearing, September 28, she filed an objection to the Motion for Relief combined with a request that she be granted a discharge from her debts. The Court on September 29 entered an Order granting the creditors' request for relief and announced that it would deny the Debtor's request for a discharge. At the same time, the Court, stating that it was troubled by "irregularities" that had come to light, announced that it would extend the § 727 and § 523 discharge and dischargeability deadlines indefinitely. This oral order was memorialized in a written order on October 16, 1998. On November 3, 1998, the Court entered an Order directing the Debtor to take various actions, such as providing her actual residence address, providing the names she had used in the last 10 years, a comprehensive description of her alleged medical disability, and the address and telephone number of "Dr. Joseph Lindsay," among other things.[3]

Later that month, on November 23, 1998, a pleading captioned "Notification of

$654,833.00 plus accrued interest). Her other listed debts consisted of two disputed debts to the Internal Revenue Service totaling $13,413.99.

2. Perhaps it would be appropriate for the Court to observe at this juncture that none of these medical conditions has been evident over the course of several days of hearings spanning the last two years. The Debtor has

behaved normally in the Courtroom, speaking and walking without any apparent difficulty whatsoever, and without requesting any special consideration because of an inability to control her bowels and/or bladder.

3. The Debtor has never filed a response to this Order and has never, for the most part, provided the Trustee with the information that the Court directed her to provide.

Death of Debtor Marilyn Moss" was filed with the Court. Over the signature of one "Jonathan Lindstrom, Administrator," it stated that Lindstrom was the administrator (sic) of the Last Will and Testament of Marilyn Moss, that on November 15, 1998, Moss had been rushed to a hospital suffering with "an extreme migraine headache," that Moss had died in the emergency room of "what the doctor later confirmed was an (sic) brain aneurysm," and that the "few assets left in the estate must be used to pay for Marilyn Moss (sic) coffin and tombstone."

The filing of the Ex Parte Application on August 27, 1998, and the Notification of Death on November 23, 1998, led to Moss's indictment by a federal grand jury on two counts of bankruptcy fraud in violation of 18 U.S.C. § 152. Moss was eventually arrested by United States Marshals on February 24, 1999, in Ottawa, Kansas, and was incarcerated at Leavenworth, Kansas. The District Court denied bond.

On April 16, 1999, Moss, through her counsel in the criminal proceeding, filed a request in the District Court for a judicial determination of her mental competency, pursuant to 18 U.S.C. § 4241(a) and (b). After a medical examination and after a hearing on July 21, 1999, the District Court found that Moss was suffering from a mental disease or defect rendering her unable to understand the nature and consequences of the criminal proceedings against her and unable to assist properly in her defense. Accordingly, the District Court committed Moss to the custody of the U.S. Attorney General for hospitalization and treatment.

As a result of the District Court's Order, the Trustee on August 17, 1999, filed in this Court a Motion for Appointment of Guardian ad Litem or Next Friend of Debtor, pursuant to Bankruptcy Rule 1016, FED. R. BANKR. P. After a hearing, this Court on September 28, 1999, appointed Patricia E. Hamilton, a Kansas City attorney with extensive bankruptcy experience, as the limited guardian of the Debtor, to serve until such time as Moss was capable of competently participating in her bankruptcy case. Moss filed an untimely appeal of this Order and the appeal was dismissed.

During the period of the guardianship, and despite Court Orders directing her not to do so, Moss continued to file numerous pleadings, appeals, and other documents in her case, often without consultation with or the approval of the guardian. As a result, the guardian on May 15, 2000, asked the Court to re-evaluate Moss's competency to participate in the bankruptcy proceedings. Then, on May 25, 2000, after further mental examinations had been conducted of the Debtor, the District Court found that Moss was competent to understand the charges against her and to assist in her criminal defense, and was therefore competent to proceed in the criminal case. This Court held a hearing on June 1, 2000, on the guardian's motion, and on June 5, 2000, this Court entered an Order finding that Moss was once again competent to participate in her bankruptcy case and terminating the limited guardianship. Since that time, Moss has continued to represent herself, *pro se*, filing numerous documents and appeals and appearing in court on numerous occasions.[4]

The § 341 meeting of creditors was finally held on July 5–6, 2000.

### I.

As a preliminary matter, the Court will address the arguments raised in the Debtor's Motion for Summary Judgment, filed on July 18, 2000. In her Motion for Sum-

---

4. Moss's participation in her bankruptcy case, and the various Adversary Proceedings filed against her, has not been merely nominal. Moss is a law school graduate, though she has not passed a bar examination for licensing, according to her testimony. She has filed many detailed motions and responses which demonstrate an extensive knowledge (albeit misguided) of the law. The Court's files in the various proceedings involving the Debtor now number at least 15 and the number of documents docketed exceeds 400.

mary Judgment, the Debtor argues: (1) that the relief requested in the Trustee's Complaint should be denied, as a matter of law, because the Trustee's Complaint was untimely filed; (2) that the Trustee's Complaint should be dismissed because venue is improper; and (3) that there were no transfers from August 6, 1997, to August 6, 1998, that would support a § 727(a)(2) claim.[5] Only the timeliness objection warrants any discussion; this Court has already ruled (numerous times) that venue is proper for this Adversary Proceeding,[6] and the existence and/or validity of any transfers made by the Debtor during the one year prior to the Debtor's bankruptcy filing is one of the key disputed material facts in this Adversary Proceeding, and therefore, by definition, is grounds for denial of summary judgment.

█ Regarding the timeliness of the Trustee's Complaint, Federal Rule of Bankruptcy Procedure 4004(a) sets forth the deadline for filing complaints objecting to a debtor's discharge. "In a chapter 7 liquidation case, a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." FED. R. BANKR. P. 4004(a). It is universally accepted that the 60–day time period runs from the first date set for the meeting of creditors regardless of whether the meeting actually occurs on that date. *See, e.g., Kelly v. Gordon (In re Gordon)*, 988 F.2d 1000, 1001 (9th Cir.1993); *Peerless Ins. Co. v. Miller (In re Miller)*, 228 B.R. 399, 400 (6th Cir. BAP 1999).

In this case, the first date set for the meeting of creditors was September 2, 1998, so according to Rule 4004(a), the deadline for complaints objecting to Moss's discharge was November 2, 1998. The Trustee's Complaint, however, was not filed until April 7, 2000, over one year and five months after the statutory deadline. Therefore, absent a valid extension of the deadline, the Trustee's Complaint obviously would be untimely.

The Trustee maintains that the Complaint was timely because this Court[7] entered an order on October 16, 1998, extending the deadline for complaints objecting to the Debtor's discharge indefinitely, and therefore (1) the deadline has effectively been extended indefinitely, or (2) if it is determined that the Court's October 16 Order was improperly or mistakenly entered, the Court has the ability pursuant to § 105 of the Bankruptcy Code to correct its own error and allow the late-filed Complaint due to the Trustee's reliance on the Court's order. The Debtor argues that the Court did not have the authority to extend the deadline on October 16 and does not have the power now to correct that "mistake" or allow the untimely filing of the Trustee's Complaint.

█ This presents the Court with a unique and thorny issue. A Court may extend the time period in which complaints objecting to a debtor's discharge may be filed "on motion of any party in interest, after hearing on notice..." as long as the motion is filed before the time for filing such complaints has expired. FED. R. BANKR. P. 4004(b). The Court may not, however, extend the time period if no such motion has been made. In other words, the Court may not extend the time period

---

5. The Debtor lists a number of other grounds for summary judgment, including her mental illness (pertaining to Counts V and VII of the Trustee's Complaint), a deprivation of due process during the April 14, 1999, hearing, and the lack of Count VI's relevancy. All of these objections are without merit and warrant no further discussion here.

6. Any further suggestion in this Court that venue is not proper for this Adversary Proceeding, the other pending Adversary Proceedings, or the Debtor's main bankruptcy case will be considered frivolous and the District Court will be informed immediately of the Debtor's apparent failure to abide by the terms of her plea agreement.

7. The Honorable Karen M. See.

*sua sponte.* FED. R. BANKR. P. 9006(b)(3) ("The court may enlarge the time for taking action under Rules 1006(b)(2) ... and 4004(a) ... only to the extent and under the conditions stated in those rules."); *Nicholson v. Isaacman (In re Isaacman),* 26 F.3d 629, 631–32 (6th Cir.1994); *Themy v. Yu (In re Themy),* 6 F.3d 688, 689 (10th Cir.1993); *Anwiler v. Patchett (In re Anwiler),* 958 F.2d 925, 927 (9th Cir.1992), *cert. denied* 506 U.S. 882, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992).

■ In this case, the Court extended the deadline for filing complaints objecting to discharge without notice, without a hearing, and perhaps most importantly, without a motion by a party in interest, *i.e., sua sponte.* At a hearing held on September 29, 1998, Judge See noted several "irregularities" that were occurring in the case, including the dubious nature of the Debtor's alleged physical disabilities which prevented her from attending the § 341 meeting, the Debtor's residence being a "mail drop" facility, and the remarkable dearth of assets listed on the Debtor's Schedules in spite of the fact that she had obtained a $3,000,000.00 litigation settlement in California in 1992,[8] and at the conclusion of the September 29 hearing, Judge See, *sua sponte,* orally extended the

time to object to the dischargeability of debts under § 523 and to the general discharge under § 727 indefinitely. This action was memorialized in the Order entered on October 16, 1998.[9]

This Court, and specifically the undersigned, would prefer to uphold Judge See's October 16, 1998, Order for the sake of consistency and fairness, but that Order must be set aside because it is in direct contravention of the Bankruptcy Rules and established precedent.[10] Consequently, the Court must now decide (1) whether it has the authority to allow the Trustee to file an untimely complaint, and (2) if it has that power, whether it is appropriate to exercise it in the present circumstances.

The question of whether a court has the authority to allow an untimely complaint objecting to discharge has been answered in primarily three different ways, and the differences arise essentially from the characterization of the time limits for filing discharge and dischargeability actions. One group of courts holds that those time limits are jurisdictional, and therefore a court is without any authority to accept an untimely complaint, no matter what the circumstances. *See, e.g., Stoulig v. Traina (In re Stoulig),* 45 F.3d 957, 957–58 (5th Cir.1995) (per curiam) *aff'g Stoulig v.*

8. Apparently, Judge See learned of these irregularities from statements made by the creditors' attorney and the Trustee.

9. The October 16, 1998 Order states in its entirety:

This court is troubled by irregularities contained in the bankruptcy schedules and pleadings filed in this matter. It is the understanding of this Court that the Office of the United States Trustee is looking into the irregularities. It is further noted that the debtor has yet to appear before the trustee and creditors for an examination.

For these reasons, the court believes that it is appropriate to indefinitely extend the time for filing complaints to determine dischargeability of debts pursuant to 11 U.S.C. § 523; complaints to determine dischargeability of debt pursuant to 11 U.S.C. § 727; and motions to dismiss pursuant to 11 U.S.C. § 707(b).

The time for all interested parties, including but not limited to, all creditors, the chapter 7 panel trustee, and the United States Trustee to file such a complaint is extended indefinitely or until further order of this court.

Order Extending Deadline to File a Complaint to Determine Dischargeability of Debt, Objection to Discharge and Motion to Dismiss Pursuant to 11 U.S.C. § 707(b), entered October 16, 1998, Karen See, J.

10. While this Court is left with no choice but to set aside Judge See's Order as clearly erroneous and as an abuse of discretion, considering the behavior of the Debtor at the time of the Order and in light of the Debtor's subsequent attempts at obfuscation and delay in this case, we recognize and appreciate Judge See's frustration and her obvious intent to preserve the integrity of the bankruptcy process and protect the rights of creditors in the face of such conduct.

*Traina,* 169 B.R. 597 (E.D.La.1994); *Gebhardt v. Thomas (In re Thomas),* 203 B.R. 64, 70 (Bankr.E.D.Tex.1996); *In re Poskanzer,* 146 B.R. 125, 132 (D.N.J.1992); *In re Barley,* 130 B.R. 66, 69 (Bankr. N.D.Ind.1991). Another group holds that the time limits are more akin to statutes of limitations and therefore are subject to the defenses of waiver, estoppel and equitable tolling. *See, e.g., European American Bank v. Benedict (In re Benedict),* 90 F.3d 50, 54–55 (2nd Cir.1996); *In re Begue,* 176 B.R. 801, 804 (Bankr.N.D.Ohio 1995); *In re Welsh,* 138 B.R. 630, 631 (Bankr. M.D.Fla.1992). *See also, In re Santos,* 112 B.R. 1001, 1006 (9th Cir. BAP 1990) (holding that waiver and estoppel but not equitable tolling apply). Finally, a third group of courts holds that the bankruptcy court has the power under § 105 of the Bankruptcy Code to allow untimely filings where the filing party has been misled by the court as to the proper filing deadline.[11] *Marshall v. Demos (In re Demos),* 57 F.3d 1037, 1039–40 (11th Cir.1995); *In re Isaacman,* 26 F.3d at 631; *In re Themy,* 6 F.3d at 689; *In re Anwiler,* 958 F.2d at 927–28. This holding amounts to an implicit recognition that the time limits are not jurisdictional but does not go as far as the courts that have acknowledged all of the defenses that generally apply to statutes of limitations.

Courts in this jurisdiction appear to have embraced the third characterization of the time limits, although no reported case has addressed this precise issue head on. In *KBHS Broad. Co., Inc. v. Sanders (In re Bozeman),* 226 B.R. 627, 630 (8th Cir. BAP 1998), the Bankruptcy Appellate Panel for the Eighth Circuit stated that Rules 4004 and 4007 are "analogous to statutes of limitations and are strictly construed," *Id.* (citing *In re Themy,* 6 F.3d at 689),[12] and consistent with this characterization, in *Allied Fid. Ins. Co. v. Reichmeier (In re Reichmeier),* 130 B.R. 539 (Bankr.W.D.Mo.1991), this Court held that it may allow an untimely complaint objecting to dischargeability where the filing party has relied on an erroneous official notice of the deadline. *Id. Cf. In re Duncan,* 125 B.R. 247, 251 (Bankr. W.D.Mo.1991).[13]

■ Most of the cases, including *In re Reichmeier,* which have held that a court may allow an untimely complaint where the filing party has relied on some error of the court, have done so in the context of a misleading or patently incorrect notice of deadline for the filing of objections to discharge and dischargeability. *See, e.g., In re Demos,* 57 F.3d at 1039–40 (court erroneously issued order that purported to extend the filing deadline for all creditors, when order was supposed to extend deadline for trustee only); *In re Isaacman,* 26 F.3d at 631 (bankruptcy court clerk gave out erroneous information about filing deadline); *In re Themy,* 6 F.3d at 689 (notice sent by bankruptcy court resetting date for meeting of creditors erroneously re-set filing deadline); *In re Anwiler,* 958 F.2d at 927–28 (same). The instant case presents a slightly different scenario, however, inasmuch as the "mistake" of the court that needs "correcting" was not an unintentional error of the court or the clerk, but rather an erroneous application of the law.

---

**11.** This power has often been referred to as the power of the court to correct its own mistakes. In this Court's opinion, that phrasing is a bit misleading. A court doesn't correct the actual mistake as much as it rights the unfairness caused by the mistake. For the sake of consistency, however, we will continue to use the terminology adopted by other courts.

**12.** As noted above, the court in *In re Themy* allowed an untimely complaint on the basis that the court had the inherent power to correct its own mistakes where the court mistakenly misled a creditor as to the deadline for filing complaints. *In re Themy,* 6 F.3d at 689.

**13.** In *In re Duncan,* Judge See referred to the time limit as a "jurisdictional deadline" but analyzed it in the same way as *In re Reichmeier, i.e.,* as a statute of limitation.

At first blush, this does not appear to be the kind of mistake that can simply be "corrected"—once an abuse of discretion, always an abuse of discretion. However, the policies which underlie the holdings that a bankruptcy court has authority to allow untimely complaints where the untimeliness has been caused by an error of the court and the implications of not correcting the Court's error, compel us to find that it is proper to allow the Trustee's Complaint, notwithstanding the nature of the error.

Regarding the policies underlying the holdings allowing untimely complaints where the untimeliness has been caused by an error of the court, we quote the court in *In re Anwiler:*

> Allowing a court to correct its mistakes is not inconsistent with the purpose of Bankruptcy Rules 4004 and 4007. Under the prior bankruptcy rules a party requesting an extension of time after the time to file had passed could plead excusable neglect. When the new rules eliminated excusable neglect as a remedy, the parties were put on notice that they must be diligent in pursuing their claims. The intent behind the rules is not circumvented by allowing an untimely complaint to stand when a party relied on a court document sent before the deadline had expired. *It would be very harsh indeed to deny equitable relief in cases where the delay in filing is not due to the fault of either party.* While it is true that the Creditors could have made a motion to extend time if they were confused about the proper date for filing the complaint, Anwiler [the debtor] could have also asked the court for clarification. As between two innocent parties, if one party must bear a loss, it should be the Debtor because he had notice of the erroneous date and had greater incentive to examine and correct the notice. It does not serve the Debtor well in equity to object to the complaint after the Claimants have rea-

sonably relied on and complied with the erroneous notice.

*In re Anwiler,* 958 F.2d at 929 (quotes and cites omitted; emphasis added). *See also, In re Themy,* 6 F.3d at 690 ("[W]hen the court's act affirmatively misleads the creditor as to a deadline, the court bears the responsibility for correcting its error.").

The injustice that would result if the Court did not remedy this error is both apparent and insidious. The apparent effect is that the Trustee would be penalized for his reliance on a court order—a result we cannot permit. For the integrity of the courts and the bankruptcy process, it is imperative that parties be able to rely on orders of the court. "To hold otherwise would be to permit parties the option of deciding which orders to obey, or conversely to condemn parties to the instability of guessing which orders to abide and which to ignore." *In re Demos,* 57 F.3d at 1039. The insidious effect is that the Trustee and creditors would effectively be denied any opportunity whatsoever to object to the Debtor's discharge, through no fault of their own—another result we cannot permit. This anomaly is caused by the relationship between and practical application of Bankruptcy Rule 4004 and Bankruptcy Code § 727(d).

Rule 4004(a),(b) and (c) and Code § 727(d) operate together to provide creditors and the trustee an adequate opportunity to object to a debtor's discharge while at the same time offering finality in the bankruptcy process to facilitate a debtor's prompt rehabilitation. Rule 4004 provides a relatively short time period (60 days) in which diligent creditors and the trustee have an opportunity to object to the debtor's discharge based on the information available during the early stages of a bankruptcy case. Upon the expiration of that time period, the court "shall forthwith grant the discharge..." FED. R. BANKR. P. 4004(c). Subsequent to the entry of the discharge, section 727(d) provides the mechanism by which creditors and the trustee may object to a debtor's

discharge. Those objections must be based on evidence unavailable or not discovered during the time prior to the entry of the discharge, and under § 727(e) they have the later of one year from the granting of the discharge or until the case is closed to file a complaint. 11 U.S.C. § 727(e).

The Court's Order of October 16, 1998, upset this statutory scheme. First, the Order effectively prevented the creditors and the Trustee from seeking an extension of the deadline, supposing they had a suspicion that grounds for a § 727(a) action existed, but were not ready to file such an action. Any request for an extension would most likely have been viewed by the Court as unnecessary or even improper.

Second, the indefinite extension of the deadline for complaints objecting to discharge had the effect of indefinitely extending the entry of the discharge, which in turn, prevented the Trustee and creditors from proceeding under § 727(d) when new information came to light after November 2, 1998, (the original deadline for filing discharge complaints) regarding the Debtor's fraudulent conduct—the discharge could not be revoked under § 727(d) if it had never been entered.

Third, assuming that the discharge is eventually entered, the trustee and creditors will *still* be unable to proceed under § 727 because, under the terms of that statute, the action must be based on newly discovered evidence, and the Court assumes (rightly or wrongly) that all of the relevant evidence of the Debtor's allegedly fraudulent conduct has been already discovered. Much as Judge See originally suspected, this case has been plagued by "irregularities" from its inception and has continued to be so for the two-plus years it has been pending (although the Debtor has become significantly more cooperative and forthright since her release from prison and the § 341 meeting, which was held on July 5–6, 2000). Most of those irregularities and the heretofore unknown fraudulent actions of the Debtor have only come to light in the last year, primarily through the diligent efforts of the Trustee (aided by investigations made by the Federal Bureau of Investigation and the United States Attorney's Office). However, because the discharge was never entered (as a result of the Court's October 16 Order), the Trustee cannot use the "newly" discovered evidence to pursue an action based on § 727(d), and never will be able to. As we mentioned above, that is a result we cannot accept.

There is one additional reason we are willing to allow the Trustee's Complaint as timely, and that is the Debtor's failure to object to the entry of Judge See's October 16, 1998, Order until July 18, 2000, over one and a half years after its entry. We believe that the Debtor, as the party most directly and negatively affected by the Order, should bear some of the responsibility for its (unintended) consequences. *See In re Anwiler*, 958 F.2d at 929 ("As between two innocent parties, if one party must bear a loss, it should be the Debtor because he had notice of the erroneous date and had the greater incentive to correct the notice."). And the Debtor cannot be heard to complain that the error wasn't apparent. For as we discussed above, the Order was faulty from its inception; the relevant rules (Rule 4004 and Rule 4007) have not changed since 1998 and the case law interpreting those rules as prohibiting the *sua sponte* extension of the deadline for filing has existed since at least 1992. *Id.* Notwithstanding, the Debtor did not take any action to have that Order "corrected" until well after the deadline for filing discharge complaints or extensions thereof had passed. In a sense, the predicament created by Judge See's October 16, 1998, Order was a result of the Debtor's failure to conscientiously monitor the developments in her case and vigorously protect her rights, which judging from the number of appeals taken from this Court's rulings is something she has no trouble with today.

 Finally, we reiterate that the source of the Court's power to "correct" its mistake and allow the Trustee's Complaint is found in 11 U.S.C. § 105(a).[14] Although the Court's power through § 105(a) is not unlimited, using § 105(a) to correct a mistake of the court is a well recognized application. "The equitable power given to courts by 11 U.S.C. § 105(a) would be meaningless if courts were unable to correct their own mistakes." *In re Anwiler,* 958 F.2d at 929. *See also, In re Demos,* 57 F.3d at 1039–40, *Coggin v. Coggin (In re Coggin),* 30 F.3d 1443, 1450 (11th Cir. 1994); *In re Isaacman* 26, F.3d at 631, *In re Themy,* 6 F.3d at 689, *A & A Sign Co. v. Maughan,* 419 F.2d 1152, 1155 (9th Cir. 1969); *Dreyer and Traub, LLP v. Victor (In re Victor),* 197 B.R. 450, 453 (Bankr. S.D.N.Y.1996); *In re Mann,* 197 B.R. 634, 634 (Bankr.W.D.Tenn.1996); *In re Grossot,* 205 B.R. 341, 343 (Bankr.M.D.Fla. 1997). And although the generally strict deadline for filing objections to the debtor's discharge requires due deference, it too must yield when an error of the court, if left uncorrected, would cause a grave miscarriage of justice.

[I]n general, the deadline requirements of Rule 4007(c) are "set in stone." However, the case law permits relief under § 105 where it is the court's own act that is at issue, and the general rule must bend under the equities of the situation.... As between the defendants and the plaintiff in this case, all are innocent parties affected by the court's mistake. Nonetheless, the court finds that the debtors should bear the burden of that mistake, as the debtors had the ability and the incentive to review the notice and notify the court of the error. They did not do so, and may not now complain that the creditor failed to file a complaint when the erroneous notice did not notify the creditor of the requirement to do so.

*Hartje Lumber, Inc. v. Brach (In re Brach)* 195 B.R. 897, 904 (Bankr.W.D.Wis. 1995) (citations omitted).

Therefore, for the reasons stated above, the Court will exercise its powers, pursuant to § 105 of the Bankruptcy Code, to correct its mistake of October 16, 1998, on which the Trustee reasonably relied, and will deem the Trustee's Complaint Objecting to Discharge, filed on April 7, 2000, timely and properly filed.[15]

In sum, we conclude that the Debtor is not entitled to summary judgment on any of the bases asserted—the Trustee's Complaint is determined to be timely, venue for this Adversary Proceeding is proper, and there are genuine issues of material fact as to whether there were transfers as set forth in Counts I and II of the Trustee's Complaint. Therefore, the Court will deny the Debtor's Motion for Summary Judgment and proceed to the merits of the Trustee's Complaint.

## II.

The Trustee's Complaint contains seven counts, each based on a different subsection of 11 U.S.C. § 727(a). Listed with the statute cited therein, they are, in order: Count I—§ 727(a)(2)(A); Count II—§ 727(a)(2)(B); Count III—§ 727(a)(3); Count IV—§ 727(a)(4)(A); Count V—§ 727(a)(4)(D); Count VI—§ 727(a)(5); and Count VII—§ 727(a)(6)(A). As we will discuss in more detail below, our findings of fact contained in our Memorandum

---

**14.** Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
11 U.S.C. § 105(a).

**15.** Because, as we discuss below, we have determined that the Debtor's discharge should be denied, we do not need to further "correct our mistake," *i.e.,* we don't need to set another deadline for complaints objecting to discharge or enter a discharge.

Opinion and Order entered in Adversary Proceeding 00–4091, which are incorporated by reference herein, also support the finding here that the Trustee is entitled to relief on all counts of his Complaint. However, as an initial matter, we explain why the Trustee is also entitled to the relief requested in Count IV of his Complaint as a matter of law.

In order to prevail on Count IV of his Complaint, the Trustee must establish, by a preponderance of the evidence,[16] that "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The Trustee argues that he has met this burden because Moss's criminal conviction under 18 U.S.C. § 152(2) is *res judicata* as to the key factual issues. The Trustee is correct.

It is well established that a criminal conviction for a bankruptcy crime that is also a § 727 ground for denial of discharge will preclude the relitigation of the common factual issues. *Raiford v. Abney (In re Raiford)*, 695 F.2d 521, 522–23 (11th Cir.1983); *Transamerica Premier Ins. Co. v. Chaplin (In re Chaplin)*, 179 B.R. 123, 126–27 (Bankr.E.D.Wis.1995); *Flatau v. Stewart (In re Stewart)*, 186 B.R. 322, 325–27 (Bankr.M.D.Ga.1995); *Ramsay v. Lloyd (In re Lloyd)*, 142 B.R. 866, 869–73 (Bankr.E.D.Ark.1992). *See also, CPI Oil & Refining, Inc. v. Dennis (In re Dennis)*, 78 B.R. 1012, 1015 (Bankr.N.D.Ala.1987) (precluding relitigation of issues raised in debtor's conviction for a bankruptcy crime in subsequent § 523 action). Specifically applied, a conviction *or guilty plea* under 18 U.S.C. § 152 for making a false oath in connection with a bankruptcy proceeding bars the relitigation of the factual issues in a subsequent action objecting to a debtor's dis-

charge under § 727(a)(4)(A). *In re Raiford, supra; In re Lloyd, supra.*

In this case, the Trustee has alleged eleven instances of the Debtor's false oath and account (listed in the paragraphs 16A thru K in the Complaint). Of these allegations, at least one (para.16.K.) referenced the same facts that formed the basis of Count I of the criminal charges brought against Moss. Moss was charged with knowingly and fraudulently making a false declaration to a U.S. Bankruptcy Court, in accordance with 18 U.S.C. § 152,[17] and on June 8, 2000, Moss admitted that she knowingly and fraudulently made false declarations and statements in a pleading captioned Disabled Debtor Ex-parte Application for 30 Day Continuance of Creditors Meeting and Accommodation under the Americans with Disabilities Act.[18] Therefore, based on the principles of *res judicata*, this Court will not relitigate the issue of whether Moss knowingly and fraudulently made false declarations and statements in connection with this bankruptcy case.

For the reasons stated above, the Court determines that, as a matter of law, the Trustee is entitled to the relief requested in Count IV of his Complaint. Accordingly, the Debtor's discharge will be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

## III.

Although the Court has determined that the Trustee has, as a matter of law, established that the Debtor's discharge should be denied pursuant to § 727(a)(2)(A) (Count IV), we will rule on the other six counts, inasmuch as the Trustee has satisfied his burden of proof on those counts as well. Counts III, V, VI and VII will be dealt with together inasmuch as they are generally supported by the same facts.

---

16. *Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 660–61, 112 L.Ed.2d 755 (1991).

17. *See* District Court for the Western District of Missouri, Case No. 99–00037–10–CR–W–4.

18. *See* Transcript of Change of Plea Proceedings, June 8, 2000, Case No. 99–00037–10–CR–W–4.

### 1. Count I.

■ Count I of the Trustee's Complaint alleges that the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A). Section 727(a)(2)(A) provides, in pertinent part, that the court shall grant the debtor a discharge, unless the debtor, "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed ... property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). Specifically, the Trustee alleges that the Debtor transferred the following property within one year before the date of the filing and with the intent to hinder, delay or defraud a creditor or bankruptcy trustee:

A. A 1996 Winnebago Adventurer, VIN 3FCMFS3GXTJA05408, and all accessions and accessories thereto;

B. A 1994 Dodge Dakota B 250 Ram Van VIN 2B6HB21YORK110480, and all accessions and accessories thereto;

C. A 1996 Toyota Tacoma VIN 4TAN142N7TZ195426, and all accessions and accessories thereto;

D. A 1992 Toyota 4 Runner VIN JT3VN39W4N7TZ195426, and all accessions and accessories thereto;

E. A 1992 Mercedes 4 Door Sedan VIN WDBEA34E7NB763055, and accessions and accessories thereto;

F. Real estate and improvements consisting of a house and land located at 1724 Ocean Drive, Oxnard, California;

G. A Rolex watch of a value in excess of $10,000.00;

H. Cash in excess of $9,000.00; and

I. Securities and money in excess of $100,000.00.

Based on our findings of fact and conclusions of law, contained in the Court's Memorandum Opinion and Order entered contemporaneously herewith in Adversary Proceeding 00–4091, we find that the Debtor transferred within one year before the date of the filing and with the intent to hinder, delay or defraud a creditor or bankruptcy trustee, items A thru F and I. Insufficient evidence was adduced at trial to support a finding that items G and H were transferred within the meaning of § 727(a)(2)(A). However, it is not necessary for us to find that all of the items listed were in fact transferred for the Trustee to prevail on this Count; one is sufficient, and the Trustee has made his case as to seven items of substantial value. Accordingly, the Court will grant the relief requested in Count I of his Complaint.

### 2. Count II.

■ Count II of the Trustee's Complaint contends that the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(B). Section 727(a)(2)(B) provides, in pertinent part, that the court shall grant the debtor a discharge, unless the debtor, "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed ... property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(B). Specifically, the Trustee alleges that on February 16, 1999, (the Debtor filed her bankruptcy petition on August 6, 1998) the Debtor transferred money and property of the estate in excess of $20,000.00 to an account in the name of M. Margaret Whitman Bryant, with the intent to hinder, delay and defraud her creditors.

Based on our findings of fact and conclusions of law contained in the Court's Memorandum Opinion and Order entered contemporaneously herewith in Adversary Proceeding 00–4091, we find that the Trustee has proven by a preponderance of the evidence all of the elements necessary to support a denial of discharge under § 727(a)(2)(B). Accordingly, the Court will grant the relief requested in Count II of the Trustee's Complaint.

*3. Counts III, V, VI and VII.*

█ Counts III, V, VI and VII of the Trustee's Complaint rely on four subsections of 11 U.S.C. § 727(a). They are, in order, § 727(a)(3), § 727(a)(4)(D), § 727(a)(5) and § 727(a)(6)(A). Subsection (a)(3) provides for a denial of discharge when a debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). Subsection (a)(4)(D) provides for a denial of discharge when a debtor has "knowingly and fraudulently, in or in connection with the case ... withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4)(D). Subsection (a)(5) provides for a denial of discharge when a debtor has "failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). Subsection (a)(6) provides for a denial of discharge when a debtor has refused "to obey any lawful order of the court, other than an order to respond to a material question to testify." 11 U.S.C. § 727(a)(6).

Although Counts III, V, VI and VII of the Trustee's Complaint rely on different subsections of § 727(a), each with slightly different requirements, in this case all of them are supported by a common nucleus of fact, namely, the Debtor's failure to turn over, either directly or constructively, documents relating to her financial condition.[19] The most egregious example of this has been the Debtor's failure to turn over or facilitate the turn over of documents contained in the Winnebago and in various self-storage facilities located in Tulsa, Oklahoma. Those documents, which included statements from financial institutions on accounts owned by or over which the Debtor had custody and indicia of ownership of significant assets (*e.g.,* deeds of trust and titles to cars), were obtained only as a result of a lawful FBI search[20] of the Winnebago and the Trustee's search, under color of law provided by this Court, of the Oklahoma storage facilities.

The Debtor's failure to produce or facilitate the production of these documents directly implicates § 727(a)(3), (4)(D), and (a)(5), and because the Court ordered the Debtor on April 14, 1999, *inter alia,* to turn over documents and identify persons in custody of information relating to the Debtor's property, her conduct also constituted a failure to abide by Court orders, thereby implicating § 727(a)(6)(A).[21] Therefore, based on the findings of fact and conclusions of law contained in the Court's Memorandum Opinion and Order entered contemporaneously herewith in Adversary Proceeding 00–4091 and based

19. Although not specifically mentioned in the Trustee's Complaint, the Court notes that the Debtor has also failed to abide by Judge See's Order of November 3, 1998, in which the Debtor was ordered, among other things, to provide the address and telephone number of the "Dr. Joseph Lindsay", who had executed the declaration filed on August 27, 1998, concerning Moss's medical problems and disabilities, to provide a comprehensive description of her alleged medical disabilities, and to provide all of the names and aliases used by her in the last 10 years.

20. Contrary to the assertions of the Debtor, the District Court has never found that the FBI's search was illegal.

21. The Court recognizes that at the time the April 14, 1999, Orders were entered directing the Debtor to turn over property, turn over documents, identify persons in custody of information relating to the Debtor's property, etc., she was incarcerated and lacked the ability to physically respond to those orders. However, it was well within the Debtor's capacity to provide information to the Trustee or enlist others to help her to comply with the Court's Orders.

on the conduct described above, the Court finds that the Debtor's discharge should be denied pursuant to § 727(a)(3), § 727(a)(4)(D), § 727(a)(5) and § 727(a)(6)(A). Accordingly, the relief requested in Counts III, V, VI and VII of the Trustee's Complaint will be granted.

Therefore, for the reasons stated herein, it is

**ORDERED** that the Debtor's Motion for Summary Judgment be and is hereby DENIED. It is

**FURTHER ORDERED** that this Court's Order, entered on October 16, 1998, in Case No. 98–43272, be and is hereby SET ASIDE. It is

**FURTHER ORDERED** that the Trustee's Complaint Objecting to Debtor's Discharge, filed on April 7, 2000, be and is hereby deemed timely filed. It is

**FURTHER ORDERED** that judgment be and is hereby entered for the Trustee on all counts of his Complaint Objecting to Debtor's Discharge, filed on April 7, 2000. Accordingly, it is

**FURTHER ORDERED** that Debtor Marilyn M. Moss's discharge be and is hereby DENIED pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), 727(a)(5) and 727(a)(6)(A).

**SO ORDERED.**